The STATE of Ohio, Appellee,

v.

LAKE, Appellant.

[Cite as *State v. Lake* (1996), 111 Ohio App.3d 127.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9-95-29.

Decided May 15, 1996.

128

*Jim Slagle,* Marion County Prosecuting Attorney, and *Renee L. Potts,* Assistant Prosecuting Attorney, for appellee.

*Clifford C. Spohn,* for appellant.

HADLEY, Presiding Judge.

Defendant-appellant, Steven C. Lake, appeals from the judgment of conviction and sentence of the Marion County Court of Common Pleas, finding him guilty of a violation of R.C. 2913.02(A)(3), theft, a third degree felony,[1] pursuant to the verdict of the jury.

---

1. A third degree theft offense requires proof that the value of the property or services stolen exceeds $5,000 but is less than $100,000.

On November 2, 1994, the Marion County Grand Jury returned an indictment against appellant, charging him and Thomas E. Bentley with one count of violating R.C. 2913.02(A)(3), a second degree felony.[2] The bill of particulars, filed December 7, 1994, alleged that between February 1, 1991 and December 31, 1993, appellant and Bentley "did knowingly obtain or exert control over property valued at $100,000.00 or more, from Thomson Newspapers, by deception, and with purpose to deprive Thomson Newspapers of said property."

Thomson Newspapers owns the Marion Star ("Star"), a newspaper with its primary circulation in Marion County. Appellant was the publisher of the Star from late 1990 through early 1994. Sometime prior to February 1991, the decision was made to renovate the building in which the Star operated and was published. Appellant chose Bentley Construction Company, owned by co-defendant Bentley, to perform the renovations. A building nearby referred to as the Depot by the parties was utilized to accommodate the daily operations during the renovations at the Star building. Some renovations also needed to be made at the Depot to accommodate the operations.

At approximately the same time as the renovations at the Star facility began, appellant hired Bentley to do renovations at his recently purchased personal residence at 363 Durfee Drive, Marion, Ohio.

The indictment further alleged that although the Star had been legitimately billed for work done at the Star facility by Bentley Construction, Thomson Newspapers, d.b.a. the Star, was also billed for work that Bentley Construction performed at appellant's personal residence. The indictment alleged that Thomson Newspapers made payments of $319,824.35 to Bentley Construction and/or Bentley personally from the Star's checking account. The indictment stated that the amount that had been deceptively billed to Thomson Newspaper was approximately $106,000 and that the value of the work Bentley Construction performed at the Star facility was approximately $140,000.

Following trial, the jury returned a verdict of guilty against appellant on the sole count in the November 1994 indictment. The trial court journalized the verdict of the jury and sentenced appellant to one and one-half years' imprisonment and a $5,000 fine, and imposed a $75,000 restitution order.

It is from this judgment of conviction and sentencing that appellant sets forth two assignments of error for our review.

---

**2.** A second degree theft offense requires proof that the value of the property or services stolen exceeds $100,000.

Assignment of Error No. 1

"The state did not prove beyond a reasonable doubt all the elements of the offense of theft F3 $5,000.00 to $100,000.00."

■ In his first assignment of error, appellant argues, in essence, that the weight of the evidence presented by the prosecution did not support his conviction for theft.

When reviewing an assignment of error alleging that the jury's verdict was against the manifest weight of the evidence, we must consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

Appellant was found guilty of violating R.C. 2913.02(A)(3), which states:

"No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

" * * *

"(3) By deception[.]"

At trial, the prosecution presented evidence of the amount of materials and labor Bentley Construction provided in the renovation of appellant's home and that the Star had been billed for, and paid, these expenses. Moreover, the prosecution presented evidence that the Star and Depot buildings were appraised in 1994 by Don Davis, and that Davis's appraisal resulted in the conclusion that the amount billed to the Star for the renovations to the Star and Depot buildings ($319,000) was substantially more than the amount of the actual renovations performed pursuant to his appraisal of the renovations ($140,000).

Appellant contends that Davis's appraisal of the buildings' renovations was not accurate because Davis relied upon a Star employee, David Wykoff, to point out the renovations and Wykoff did not inform Davis of the complete details of the work performed by Bentley. Moreover, Davis did not view the work performed at the Depot but, instead, relied upon Wykoff to explain the work that Bentley had performed there. Finally, appellant argues that the "fudge factor" of twenty percent used by Davis reflects that his appraisal was "highly inaccurate" and speculative.

Davis was cross-examined by appellant's counsel regarding the accuracies and "fudge factor" of his appraisal of the Star and Depot buildings. The jury heard Davis's testimony that he did not include some of Bentley's work on the Star building and also, that he did not inspect the Depot building, but instead relied

upon Wykoff's statements regarding the renovations therein performed by Bentley. The jury also heard Davis's testimony regarding the "fudge factor" added to his appraisal.

At trial, appellant presented evidence from Frank Reckert, Manager of Construction for Thomson Newspapers, who stated that he believed that for the money Thomson paid for the renovations, Thomson was getting a very good deal.

Appellant argues that the jury could only have disbelieved the testimony of Reckert and believed Davis's testimony and, since Davis's appraisal was highly inaccurate, there was not proof beyond a reasonable doubt presented on one of the elements of theft (presumably that element of theft that requires that the prosecution prove that the defendant "knowingly obtain * * * control over either the property or services" of the owner), and, thus, the trial court's judgment must be reversed.

As indicated, appellant's trial counsel cross-examined Davis thoroughly about how Davis had arrived at his appraisal figure. Appellant also presented the testimony of Reckert, who believed that Thomson received good value for the money it spent.

As is well established, the weight to be allotted the evidence and the credibility of the witnesses are issues to be resolved by the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

Moreover, as pointed by the prosecutor in her brief, the state presented evidence at trial that the Star paid for renovations to appellant's personal residence in excess of $100,000.

Additionally, we find no merit to appellant's argument that the prosecution's accounting of appellant's funds was not correct or proper. Appellant relies upon evidence presented to the trial court in support of his motion for new trial [3] and at appellant's subsequent forfeiture hearing, as well as the prosecutor's inferences at trial to support his argument. We will not consider the evidence appellant presented in support of his motion for new trial or at his forfeiture hearing. Rather, we consider only that evidence that the trier of fact had before it when reaching its verdict. Thus, the only basis that remains for this argument is that the prosecutor made "inferences" about appellant's inability to pay because appellant had no cancelled checks indicating that he made payment nor did he have sufficient cash on hand to pay for the renovations to his personal residence.

---

**3.** Appellant has not raised an assignment of error concerning the trial court's denial of his motion for a new trial.

We find no error, prejudicial or harmless, in the prosecution's references or inferences in its argument that appellant did not pay for the renovations to his personal residence because he did not have the funds to do so.

Thus, we find that, viewing the evidence most strongly in favor of the prosecution, a reasonable trier of fact could find the essential elements of R.C. 2913.02(A)(3) proven beyond a reasonable doubt.

For the reasons set forth above, appellant's first assignment of error is overruled.

Assignment of Error No. 2

"The court's imposition of $75,000.00 restitution constituted plain error."

Appellant makes two arguments to substantiate his second assignment of error. First, he argues that the trial court's failure to hold a hearing on his ability to pay restitution was prejudicial error. Second, he argues that the trial court erred in its assessment of the amount of restitution to be imposed upon appellant, as it should be an amount equal to the actual loss to the victim caused by the defendant's commission of the offense.

Appellant relies upon *State v. Wohlgemuth* (1990), 66 Ohio App.3d 195, 583 N.E.2d 1076, as his basis for arguing that the trial court committed prejudicial error by not holding a hearing on his ability to pay. *Wohlgemuth* states, at 200, 583 N.E.2d at 1079:

"There is no evidence of the damages, costs or the effort or ability of appellant. A hearing is required to prove damages and the costs incurred. *State v. Irvin* (1987), 39 Ohio App.3d 12, 528 N.E.2d 1277. The court failed to hold a hearing at which evidence would be presented of the damages and costs and the effort and ability to pay."

First, we note that a reading of the case upon which *Wohlgemuth* relies, *State v. Irvin,* examines a restitution issue; however, the issue of whether a hearing is required before a trial court orders restitution was not decided by the *Irvin* court.

In addition, there is no requirement in R.C. 2929.11(D) that the trial court hold a hearing in order to prove the amount of damages incurred to the victim or the ability of the defendant to pay. R.C. 2929.11(D) states:

"Whoever is convicted of or pleads guilty to a felony of the third or fourth degree and did not, during the commission of that offense, cause physical harm to any person or make an actual threat of physical harm to any person with a deadly weapon * * * and who has not previously been convicted of an offense of violence shall be imprisoned for a definite term, and, in addition, may be fined or required

to make restitution. The restitution shall be fixed by the court as provided in this section. * * * "

The last sentence quoted *supra* refers to R.C. 2929.11(E), which sets forth how a trial court shall assess restitution:

" * * * The court, in any other case, may require a person who is convicted of or pleads guilty to a felony to make restitution for all or part of the property damage that is caused by his offense and for all or part of the value of the property that is the subject of any theft offense * * * that the person committed."

■ Thus, we agree that before a trial court can impose a restitution order on a defendant the amount of damages must be established. However, if the damages that were caused by the defendant's theft offense have been determined at trial, a separate hearing may not be necessary.

■ Herein, the record supports the trial court's restitution order. The jury made a finding that the value of the property stolen by appellant was less than $100,000 and the evidence presented at trial established that appellant caused the Star to be billed approximately $100,000 for labor and materials utilized at appellant's personal residence.

■ The only limitation imposed by R.C. 2929.11(E) is that the amount of the restitution order cannot *exceed* the value of the property that is the subject of the theft offense. However, R.C. 2929.11(E) does not prohibit a trial court from imposing an amount of restitution *less than* the amount of actual damages. Herein, the trial court imposed a $75,000 restitution order upon appellant, an amount *less than* the value appellant actually stole from the Star. Therefore, we find no error in the trial court's order of restitution.

■■ Finally, we find no prejudicial error in the trial court's failure to order a hearing on appellant's ability to pay. As referred to *supra*, R.C. 2929.11(D) and (E) do not require the court to make such an inquiry into a defendant's ability to pay restitution prior to imposing the restitution order. Also, the case relied upon by appellant, *Wohlgemuth, supra*, does not hold that a hearing must be held to determine a defendant's ability to pay restitution prior to imposing such an order. Additionally, appellant made no objection when restitution was imposed that he had been denied a hearing regarding his ability to pay restitution. An error which was not objected to at trial is considered waived unless a reviewing court finds that such error is plain error. *State v. Gibson* (1993), 89 Ohio App.3d 188, 190, 623 N.E.2d 1266, 1267–1268. We find no plain error in the trial court's failure to hold a hearing on appellant's ability to pay restitution. Finally, we note

that when appellant was given the opportunity to make a statement at his sentencing hearing, appellant stated:

"I'm also trying to make arrangements to talk about reimbursement. If the Court rules that I should do that, I would be willing to try to arrange for reimbursement. There is [*sic*] several options available that I can look into."

Appellant apparently alluded to the fact that he indeed may be responsible for restitution to the victim, and accepts such responsibility, without mention of his alleged financial distress.

For the above-stated reasons, we find no error prejudicial to appellant in the trial court's restitution order. Therefore, appellant's second assignment of error is overruled.

The judgment of the Marion County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.